ALLSTATE INSURANCE COMPANY,

     Plaintiff,

v.

A.O. SMITH CORPORATION,

     Defendant.

No. 15 C 6574

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Allstate Insurance Company has filed a petition seeking an order compelling A.O. Smith Corporation ("A.O.") to arbitrate a dispute regarding a Settlement/Coverage-in Place Agreement (the "Agreement"), pursuant to the Federal Arbitration Act (the "FAA"). R. 1. A.O. has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or in the alternative, to stay pursuant to the *Colorado River* doctrine. R. 7. For the following reasons, A.O.'s motion to dismiss for lack of subject matter jurisdiction is denied, but its motion for a stay is granted.

## Legal Standard

For purposes of a motion to dismiss under Rule 12(b)(1) the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiffs favor. *See Scanlan v. Eisenberg,* 669 F.3d 838, 841 (7th Cir. 2012). "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raise[d] the jurisdictional challenge . . . ."

*Craig v. Ontario Corp.,* 543 F.3d 872, 876 (7th Cir. 2008). "A motion pursuant to Rule 12(b)(1) is an appropriate avenue for raising a *Colorado River* abstention issue." *Jin Won Lee v. First Tek, Inc.*, 2013 WL 1195714, at *1 (N.D. Ill. Mar. 20, 2013) (citing *Beres v. Village of Huntley*, 824 F. Supp. 763, 766 (N.D. Ill. 1992)).

## Background

A.O. is a corporation with its principal place of business in Wisconsin that manufactured and sold products containing asbestos. R. 1 ¶¶ 2, 7. A.O. has been sued in "numerous" lawsuits regarding its products containing asbestos. *Id.* ¶ 7.

Beginning in 1967, A.O. "purchased certain primary general liability insurance policies, umbrella and excess liability insurance policies from various insurance companies," including four from Allstate. *Id.* ¶¶ 5-6. A.O. also purchased insurance policies from a number of other insurers. Some of the primary policies have been exhausted, and some of the insurers have become insolvent or are otherwise unable to pay. *Id.* ¶ 9; R. 8-2 at 6-7 (¶¶ 11-24). Due to the exhaustion of some of the primary policies and the insolvency of some insurers, disputes have arisen among A.O. and its remaining insurers with which it has umbrella and excess liability policies, regarding responsibly for A.O.'s liabilities arising out of asbestos claims. R. 1 ¶ 8.

### A. The Agreement Between Allstate and A.O.

In July 2007, A.O. and Allstate entered into the Agreement to settle their disputes. *Id.* The Agreement limits Allstate's obligations to certain percentages of the claims against A.O., and sets total annual caps on Allstate's payment

obligations of $300,000 for the first six years of the Agreement, and $500,000 each year thereafter. *Id.* ¶¶ 8-9; R. 21 at 9-10 (¶ 2.04), 11-12 (¶¶ 2.06-2.07), 13-14 (¶ 2.09), 15-16 (¶ 2.13).

Additionally, the Agreement requires A.O. to pay defense and indemnity costs that otherwise would have been the obligation of its insurers that are insolvent or otherwise unable to pay. *See* R. 21 at 8 (¶ 2.02), 9-10 (¶ 2.04), 11-12 (¶ 2.07). A.O. is also required to inform Allstate of any asbestos claims against A.O., *see id.* at 20 (¶ 4.03), and to "cooperate with" Allstate during the litigation of such claims, *see id.* at 18 (¶ 3.03(a)). The Agreement releases Allstate from all claims and liabilities under its insurance policies with A.O. *See id.* at 16 (¶ 3.01). The Agreement also includes a dispute resolution clause that ultimately requires arbitration. *See id.* at 34 (¶ 8.01).

### B.    A.O. Submits Asbestos Claims to Continental

Despite A.O.'s obligation under the agreement to inform Allstate of any asbestos claims, "beginning sometime after 2009," A.O. "stopped submitting asbestos claims to Allstate for reimbursement" and instead made a "targeted tender" of claims to Continental Casualty Company, another of its insurers. R. 1 ¶ 12.[1] Allstate alleges that A.O. submitted the claims to Continental rather than Allstate in order to avoid paying any pro rata share of indemnity and defense costs

---

[1] "The 'targeted tender' doctrine of insurance law allows an insured with multiple insurers to pick one to seek indemnity from and thus leave the others in peace." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Motorists Ins. Co.*, 707 F.3d 797, 802 (7th Cir. 2013).

for which it might be responsible under the Agreement had A.O. submitted the claims to Allstate. *Id.*

### C. Continental Files Suit in Wisconsin

In August 2014, Continental sued Allstate, A.O., and another of A.O's insurers, in Milwaukee County Circuit Court, in Wisconsin, alleging that "Continental had paid more than its fair share of defense and indemnity in connection with . . . asbestos lawsuits filed against [A.O.]." *Id.* ¶ 14; *see* R. 8-2 at 4-12. Continental seeks subrogation and contribution from Allstate and A.O.'s other insurer for $1,135,191.43. R. 1 ¶ 14; R. 8-2 at 9 (¶ 30). Continental, however, does not simply allege that it is entitled to subrogation and contribution from Allstate. Continental also alleges that A.O. has asserted that its Agreement with Allstate gives it the "right to require [Continental] to pay for all defense and indemnity payments for asbestos claims." R. 8-2 at 8 (¶ 27). Further, Continental alleges that the caps on Allstate's obligations to pay indemnity and defense costs, and the related release A.O. granted Allstate, impermissibly limit Continental's ability to receive subrogation and contribution from Allstate. *Id.* at 8-9 (¶ 29). Unlike Allstate's allegations in this Court, Continental does not allege that A.O. has failed to pay a pro rata share of the indemnity and defense costs.

Continental seeks declarations from the Wisconsin court that, notwithstanding the Agreement between Allstate and A.O., Allstate owes subrogation and contribution to Continental for past and future defense and indemnity costs Continental has paid, and might be required to pay, in actions

against A.O. *Id.* at 11-12. Continental also claims that if the Wisconsin court declares that the Agreement between Allstate and A.O. prohibits A.O. from seeking indemnification from Allstate, then A.O. has breached the terms of its policy with Continental. *Id.*

### D. Allstate and A.O.'s Answers to Continental's Allegations in the Wisconsin Case

In response to Continental's allegations in the Wisconsin case, Allstate asserted affirmative defenses based on its Agreement with A.O. In general, Allstate's answer in the Wisconsin case argues that Continental only has subrogation and contribution rights against Allstate to the extent that Allstate is obligated to A.O. for indemnity and defense costs. Since the Agreement limits Allstate's obligations to A.O., Allstate argues in the Wisconsin case that the Agreement also serves to limit Continental's rights of subrogation and contribution against Allstate.[2] Allstate does not assert a cross-claim alleging that A.O. is

---

[2] Specifically, Allstate asserts the following relevant defenses in the Wisconsin case:

> **First Affirmative Defense**
> No right of equitable subrogation exists as [A.O.] expressly released [Allstate] from all claims, and thus, there is no existing cause of action which [A.O.] could have assigned or asserted on its own behalf against [Allstate].
> **Second Affirmative Defense**
> Continental inherits no greater rights against [Allstate] then those possessed by [A.O.] as [Allstate's] insured. As [A.O.] has released its rights to recover against [Allstate], Continental has no rights to recover from [Allstate] for the underlying asbestos bodily injury claims subject to [the Agreement]. . . .
> **Fifth Affirmative Defense**

obligated to pay any of the costs for which Continental seeks subrogation or contribution from Allstate.

Conversely, A.O., in its answer to Continental's complaint in the Wisconsin court, denies that it "entered into [the Agreement] with [Allstate] . . . that include[s] all [Allstate] policies." R. 8-4 at 5 (¶ 25). A.O.'s answer also denies that pursuant to the Agreement, Allstate "agrees to pay for the asbestos claims at issue subject . . . to an annual cap . . . of $300,000 for the first six years, and $500,000 thereafter." *Id.* (¶ 26).

### E.    Allstate Seeks a Stay in Continental's Wisconsin Case

Along with their briefs on A.O.'s motion in this Court, the parties have submitted affidavits from their counsel relating off-the-record events in the Wisconsin court. A.O.'s counsel's states that at a scheduling conference on March 23, 2015, Allstate asked the Wisconsin court to address the "dispute between [A.O.] and Allstate concerning the validity of [the Agreement] pleaded in Continental's complaint before addressing the merits of Continental's contribution claim against Allstate." *See* R. 8-1 at 3 (¶ 5). According to A.O.'s counsel, the Wisconsin court rejected this suggestion and ordered the parties to participate in mediation. *Id.* The mediation occurred on June 8, 2015, but was unsuccessful. R. 1 ¶ 20.

Two weeks after the mediation on June 24, 2015, Allstate filed a motion in the Wisconsin court to stay that case to permit arbitration between Allstate and

---

[Allstate's] obligation to pay for the underling asbestos bodily injury claims is subject to the terms and conditions of [the Agreement].
R. 8-3 at 14.

A.O. pursuant to the Agreement. *See* R. 8-5. In that motion to stay, Allstate characterized its dispute with A.O. as follows:

> 4.     It is Allstate's position that [the Agreement] requires [A.O.] to pay a pro rata share of defense and indemnity costs for gaps in coverage created by primary and excess insurance policies issued by other [A.O.] insurers that are insolvent and/or otherwise unable to pay.

> 5.     It is also Allstate's position that the relief sought by Continental against Allstate is barred by the settlement release [A.O.] granted Allstate in [the Agreement].

> 6.     [A.O.] apparently takes the position that [the Agreement] is either invalid and/or that [A.O.] has no obligation to pay its pro rata share of defense and indemnity costs for gaps in coverage due to insurers that have become insolvent and/or are otherwise unable to pay.

R. 8-5 at 2 (¶¶ 4-6). Allstate also argued that "the validity and the effect of [the Agreement] between Allstate and [A.O.] must be confirmed before Continental's subrogation and contribution claims can be addressed." *Id.* (¶ 6).

On July 1, 2015, seven days after Allstate filed its motion for a stay, the Wisconsin court heard argument on Allstate's motion off the record. *See* R. 8-6. In an affidavit describing that hearing Allstate's counsel states that Continental argued before the Wisconsin court that its "anticipated" motion for summary judgment against Allstate "was in no way dependent on whether [the Agreement] between Allstate and [A.O.] was valid or effective." R. 22-10 ¶ 6. Allstate's counsel states that in response to Continental's representation regarding the contents of its summary judgment motion, the Wisconsin court stated that it would review

Continental's motion once it was filed and "would see if it could rule on . . . [it] without regard to whether [the Agreement] was valid and effective." *Id.* ¶ 7. The Wisconsin court denied Allstate's motion for a stay and set a briefing schedule for Continental's summary judgment motion. *See* R. 8-6.

### F. Allstate Turns to this Court to Compel Arbitration with A.O.

On June 26, 2015, in the midst of seeking a stay before the Wisconsin court, Allstate sent a letter to A.O. demanding that it arbitrate the dispute that had arisen in the course of Continental's case in Wisconsin. Allstate's letter stated that the dispute to be arbitrated arises out of the position A.O. "is apparently taking" in the Wisconsin court that the Agreement between it and Allstate "is either invalid and/or that [A.O.] has no obligation to comply with the terms and conditions of [the Agreement] and pay its pro rata share of defense and indemnity costs for gaps in coverage due to insurers that have become insolvent and/or are otherwise unable to pay." R. 1-2 at 4. A.O. responded to Allstate's demand with a letter on July 8, 2015, stating that "Allstate's request to arbitrate is premature," because if the Wisconsin court "determine[s] on Continental's motion for summary judgment that Continental has no contribution rights against Allstate because of [the Agreement] between [A.O.] and Allstate, then there may very well never be any reason or basis for [A.O.] and Allstate to arbitrate the issues identified in Allstate's letter." R. 1-2 at 6.

Allstate responded to A.O.'s letter refusing Allstate's demand for arbitration by filing this petition to compel arbitration on July 28, 2015. *See* R. 1. Similar to its

motion to stay in the Wisconsin court, Allstate's petition to compel arbitration describes its dispute with A.O. as follows:

> 13.    . . . . [A.O.] has attempted to improperly shift its pro rata share of defense and indemnity costs to Continental, and indirectly to Allstate. . . .
>
> 14.    . . . . Continental's claim against Allstate includes defense and indemnity costs that [A.O.] failed to pay under [the Agreement]. . . .
>
> 16.    . . . . The release that [A.O.] provided to Allstate under [the Agreement] . . . operate[]s as a bar to Continental's and other carriers' alleged subrogation and contribution rights against Allstate.
>
> 17.    [A.O.] currently takes the position . . . that [the Agreement] is somehow either invalid, unenforceable and/or that [A.O.] has no obligation to handle the asbestos claims pursuant to the terms and conditions of [the Agreement]. [A.O.] takes that position that it can make a targeted tender of the asbestos suits to any one of its insurance carriers and does not have to pay its pro rata share of defense and indemnity costs for gaps in coverage due to insurers that have become insolvent and/or are otherwise unable to pay.

R. 1 ¶¶ 13-14, 16-17.

Allstate alleges that the Court has diversity jurisdiction over its petition because Allstate is an Illinois corporation, *see* R. 1 ¶ 1; A.O. has its principal place of business in Wisconsin, *id.* ¶ 2; and "[A.O.'s] unpaid pro rata share of defense and indemnity costs that it owes under [the Agreement] is in excess of $75,000," *id.* ¶ 13. Allstate cannot remove Continental's action from the Wisconsin court because Continental is an Illinois corporation. R. 8-2 at 4 (¶ 2).

A.O. argues that Allstate's petition should be dismissed because the underlying dispute on which Allstate seeks arbitration is not ripe. Alternatively, A.O. seeks a stay of Allstate's petition pending resolution of the Wisconsin case pursuant to the *Colorado River* doctrine.

## Analysis

## I.     Subject Matter Jurisdiction and Ripeness

A.O. argues that the Court lacks subject matter jurisdiction over Allstate's petition because Allstate seeks what amounts to an advisory opinion regarding the "validity and terms, meaning and implementation of [the Agreement]." R. 8 at 6. A.O. contends that this purported dispute is not ripe because "Continental's claims against Allstate assume the validity of [the Agreement] and any as-yet-unasserted claim Allstate may have against [A.O.] for indemnification under [the Agreement] is contingent on the success of Continental's claims against Allstate." *Id.* Allstate argues to the contrary that its dispute with A.O. is ripe because A.O. has denied "the validity of [the Agreement] . . . . [i]rrespective of whether Allstate owes any contribution to Continental." R. 22 at 10. Additionally, Allstate argues that A.O. has breached the Agreement's "Obligation to Cooperate" clause by "opposing Allstate's efforts to stay Continental's Milwaukee County Coverage Action." *Id.* at 11.[3]

---

[3] Allstate alleges that jurisdiction over its petition is based on diversity. R. 1 ¶ 4. A.O. did not challenge this allegation until its supplemental brief in which it conclusorily asserts in one sentence that "Allstate's bare assertion that the amount in controversy exceeds $75,000 is insufficient." R. 29 at 2. But A.O. contends that the Agreement between Allstate and A.O. is analogous to an indemnity agreement, and "[m]any decisions in this and other circuits count the potential outlay for indemnity toward the amount in controversy, whether or not adjudication about

Section 4 of the Federal Arbitration Act provides the following regarding to subject matter jurisdiction and the requirement of a ripe dispute:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . of the subject matter of a suit arising out of the controversy between the parties . . .

9 U.S.C. § 4. "The phrase 'save for [the arbitration] agreement' indicates that the district court should assume the absence of the arbitration agreement and determine whether it 'would have jurisdiction under Title 28' without it." *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009). In other words, to determine whether the Court has jurisdiction over Allstate's petition the Court must "look through" the petition and determine whether it has jurisdiction over the "substantive conflict between the parties." *Id.* at 63. Thus, for a court to have jurisdiction over a petition to compel arbitration under the FAA there must be a ripe "dispute within the scope of the arbitration agreement." *Zurich Am. Ins. Co. v. Watts Indust., Inc.*, 417 F.3d

---

indemnity should be deferred until the state case in over." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 539 (7th Cir. 2006). In any case, the Seventh Circuit has held that "[i]n the context of actions to compel arbitration, we have adhered to the rule that, in order to ascertain whether the jurisdictional amount for the diversity statute has been met, the appropriate focus is the stakes of the underlying arbitration dispute." *America's MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004). Allstate brings this petition to determine whether its Agreement with A.O. protects it from paying part of the approximately $1.1 million for which Continental seeks subrogation and contribution. A.O. has not put forward any facts to challenge this alleged amount or to demonstrate that the allegation is not made in good faith. *See Meridian*, 441 F.3d at 541 ("[T]he sum claimed by the proponent of federal jurisdiction controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."). Thus, the Court finds that Allstate has sufficiently alleged the jurisdictional amount in controversy.

682, 687 (7th Cir. 2005); *id.* at 691 ("[The defendant's] threat of nonperformance . . . made the dispute ripe. We will therefore affirm the district court's order to arbitrate."). A dispute is ripe if "the facts alleged, under all the circumstances, show that there is substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).[4]

Allstate's dispute with A.O. is ripe. Continental's complaint raised the issue of the validity of the Agreement and seeks a declaration from the Wisconsin court that Allstate owes subrogation and contribution to Continental irrespective of any agreement A.O. made to limit the coverage it would seek from Allstate. In its affirmative defenses, Allstate alleges that Continental's subrogation and contribution rights extend no farther than A.O.'s rights for indemnity and defense

---

[4] When "ripeness . . . implicates the possibility of [a court] issuing an advisory opinion, [it] is a question of subject matter jurisdiction under the case-or-controversy requirement." *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 544 (7th Cir. 2008); *see also Biddison v. City of Chicago*, 921 F.2d 724, 726 (7th Cir. 1991) ("if the case is not yet ripe for purposes of article III, we should dismiss the case for lack of subject matter jurisdiction"). The issue of ripeness, however, does not always implicate a court's subject matter jurisdiction. *See Meridian*, 441 F.3d at 538 ("The district court supposed that ripeness always is a jurisdictional doctrine. Yet ripeness is peculiarly a question of timing rather than a limit on subject-matter jurisdiction. Although a plaintiff's asserted injury may depend on so many future events that a judicial opinion would be advice about remote contingencies—and this aspect of ripeness is part of the case-or-controversy requirement . . . ."). Since the Court holds that the dispute identified by Allstate is ripe, the Court need not determine whether the ripeness issue raised by A.O. in this case implicates the Court's subject matter jurisdiction. Such a determination would only be necessary to decide whether dismissal should be with or without prejudice, or to justify the Court's raising the issue *sua sponte*, and neither circumstance is present here.

costs against Allstate. And since A.O. agreed to limit those rights pursuant to the Agreement and released any further claims against Allstate, the Agreement controls the extent of Continental's subrogation and contribution rights. In response to these allegations A.O. has denied the validity of the Agreement. R. 8-4 at 5 (¶ 25).

A.O.'s denial is sufficient to establish a ripe dispute. The Seventh Circuit has held that a party seeking to compel arbitration regarding a contract "need not show that [the defendant] anticipatorily repudiated the [contract] to compel arbitration." *Zurich*, 417 F.3d at 690. Rather, "to show a 'dispute,' [the plaintiff] must show that [the defendant] . . . has threatened to act, in a manner inconsistent with [the plaintiff's] interpretation of the contract." *Id.* By denying the validity of the Agreement, A.O. denies the limits of Allstate's obligations to pay indemnity and defense costs, and denies A.O.'s release of all other claims against Allstate. On Allstate's theory, as expressed in its affirmative defenses, this denial exposes Allstate to claims by A.O. for indemnity and defense costs, and to Continental's claims for subrogation and contribution, beyond the limits set in the Agreement. This is a ripe dispute.

Additionally, the Agreement also requires A.O. to "cooperate with" Allstate in any proceedings related to asbestos claims against A.O. and the terms of the Agreement. *See* R. 21 at 18 (¶ 3.03(a)). A.O. opposed Allstate's motion for a stay in the Wisconsin case, and that action is plausibly a violation of the Agreement's cooperation clause. This is also a ripe dispute over which the Court has jurisdiction under the FAA.

A.O. characterizes the dispute Allstate seeks to arbitrate as analogous to an indemnification claim, and notes that the Seventh Circuit has held that "decisions about indemnity should be postponed until the underlying liability has been established." *Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003); *see also Nationwide Ins. Co. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) ("[T]he duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit."). The basis for this position is Continental's argument before the Wisconsin court that a decision on its claim for subrogation and contribution from Allstate is logically prior to a decision on whether Allstate could seek to recoup such costs from A.O. pursuant to the provision in the Agreement requiring A.O. to pay a pro rata share of the indemnity and defense costs that would have otherwise been paid by its insolvent insurers.

Despite this alleged obligation for A.O. to contribute to its own liability costs under certain circumstances, the analogy fails because the clear division between liability and indemnification that led the Seventh Circuit to hold in the *Lear* and *Nationwide* cases that it was proper to postpone hearing the indemnity claims, is not present here. A.O. urges the Court to analogize Continental's claim against Allstate to the liability claims in *Lear* and *Nationwide*, and to analogize A.O.'s alleged obligation to pay a pro rata share of its insolvent insurers' obligations to the indemnification claims in those cases. But here Continental's claim for subrogation and contribution from Allstate has already raised the issue of apportionment of payment among A.O.'s insurers. And a determination regarding Continental's right

to subrogation and contribution from Allstate necessarily implicates whether Allstate and A.O. may enter an agreement that can alter Continental's subrogation rights. There is no underlying liability issue that needs to be determined prior to analyzing the relative responsibility for A.O.'s liabilities among its insurance companies (and A.O., to the extent that it has any such obligation in these circumstances). The analogy to indemnity claims that Allstate tries to impose on this case does not fit.

Rather than analogize this case to a "duty to indemnify" claim, a more apt analogy is a "duty to defend" claim, which is ripe regardless of whether an insured's underlying liability has been determined. *See Colton v. Swain*, 527 F.2d 296, 303 (7th Cir. 1975) ("We note also that questions of an insurer's duty to defend are ripe for declaratory relief."). Unlike claims for a duty to defend, claims regarding an insurer's duty to indemnify are not ripe before the insured's liability is determined because indemnity (or a policy's scope of coverage) is often dependent on the specific *factual circumstances* of the liability, which generally are not finally determined until the end of a case. *See Meridian*, 441 F.3d at 538 ("[A] dispute about an insurer's duty to indemnify generally is not ripe for decision until the insured has been called on to pay—for until then the precise ground of liability, and thus the relation of the insured's liability to the policy's coverage and exclusions, is uncertain."); *United Nat. Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992) (the "duty to indemnify will, as the district court logically determined, depend upon the facts of each suit"). By contrast, the duty to defend is

determined with reference to the type of *allegations* made against the insured, and can be determined at the outset of litigation. *See Medmarc Cas. Ins. Co. v. Avent Am., Inc.,* 612 F.3d 607, 613 (7th Cir. 2010) (a "duty to defend" arises "when the allegations in the complaint are even potentially within the scope of the policy's coverage."). So, just as an insurer may seek a declaratory judgment regarding its duty to defend "once an insured has been sued and asserts that the policy applies," *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 856 (7th Cir. 2010), Allstate, by its affirmative defenses, seeks a judgment that the Agreement works to foil Continental's subrogation claim. Unlike an insured's indemnity claim in which the *insured* seeks a declaration concerning an inchoate liability that is dependent on factual determinations, the effect of the Agreement between Allstate and A.O. on Continental's subrogation rights are—like an *insurer's* declaratory judgment claim regarding the scope of its duty to defend—based on known contractual provisions and legal principles. The logic requiring a liability finding prior to a ruling on indemnification is not present here where both Continental's subrogation claim and Allstate's affirmative defenses raise the validity of the Agreement, which is the basis of the dispute between Allstate and A.O. The validity and force of the Agreement between Allstate and A.O. is central to whether Continental can obtain subrogation and contribution from Allstate, because Allstate has asserted in its affirmative defenses that Continental's subrogation rights are limited to the indemnity rights A.O. has purchased from Allstate. Thus, the parties' pleadings in

Wisconsin (Continental's allegations, Allstate's affirmative defenses, and A.O.'s answer) confirm that this dispute is live.

For these reasons, the Court finds that a ripe dispute exists between Allstate and A.O. such that the Court has jurisdiction over Allstate's petition to compel arbitration regarding that dispute.

## II. Abstention

A.O. also argues that the Court should abstain from exercising jurisdiction and stay Allstate's petition in favor of the Wisconsin court proceedings. The doctrine set forth by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), provides that "a federal court may stay or dismiss a suit . . . when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting *Colorado River*, 424 U.S. at 818). "However, because the federal courts have a 'heavy obligation' to exercise jurisdiction, 'only the clearest of justifications will warrant dismissal' of the federal action in deference to a concurrent state proceeding." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 517 (7th Cir. 2001) (quoting *Colorado River*, 424 U.S. at 819-20). "Therefore," the Court's "task in determining whether abstention is appropriate is 'not to find some substantial reason for the *exercise* of federal jurisdiction . . . but rather . . . to ascertain whether there exist exceptional circumstances [and] the clearest of justifications that can suffice under Colorado River to justify the *surrender* of that jurisdiction.'" *AAR Int'l*,

250 F.3d at 517-18 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)) (emphasis in *Moses*). Granting a stay is within the Court's discretion. *See Freed*, 756 F.3d at 1018.

"To determine whether a stay is appropriate, the court is required to conduct a two-part analysis." *Freed*, 756 F.3d at 1018. "First, the court must determine whether the state and federal actions are parallel." *Id.* If so, "the court must decide whether abstention is proper by carefully weighing ten non-exclusive factors." *Id.*

## A.     Parallel Actions

"For a state court case to be parallel to a federal court case under the *Colorado River* doctrine, there must be a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Freed*, 756 at 1018. "The cases need not be identical to fulfill the requirement of parallelism, but the court must examine whether 'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Id.* at 1018-19. "The court should also examine whether the cases raise the same legal allegations or arise from the same set of facts." *Id.* "[A]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction." *Id.* The Seventh Circuit reviews *de novo* district court determinations that state and federal court proceedings are parallel. *Id.*

Allstate's petition to compel arbitration is parallel to Continental's action in the Wisconsin court. Allstate and A.O. are both defendants in Continental's action, which was filed first. Although Allstate and A.O. have not asserted cross-claims

against each other, as discussed above, their pleadings in the Wisconsin action demonstrate that there is a ripe dispute between them that will be addressed in the Wisconsin case. The Wisconsin court will eventually have to determine whether A.O. should be compelled to arbitrate the disputes that are reflected in Continental's allegations and claims, Allstate's affirmative defenses, and A.O.'s denials of Continental's allegations, because those pleadings implicate the validity of the Agreement between Allstate and A.O. Since, the Wisconsin court will eventually dispose of the claims Allstate has raised here, Allstate's action is parallel to Continental's action.[5]

Allstate argues against a finding that its action is parallel to Continental's by pointing out a number of ways in which the two actions are not identical. The standard for parallelism, however, is not identity, but "substantial" similarity. So although Continental seeks subrogation and contribution in the Wisconsin case, whereas Allstate seeks to compel arbitration in this Court, this difference in procedural posture does not change the fact that both actions raise the validity of the Agreement between Allstate and A.O.

Further, just because Allstate and A.O. have not filed cross-claims against each other does not mean that they are prohibited from doing so. Indeed, Allstate's point that it specifically decided not to file cross-claims against A.O. in order to

_____

[5] This conclusion is not altered by the fact that Continental and the other insurance company defendant in the Wisconsin case are not parties to this action. *See CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849 (7th Cir. 2002) (affirming a district court's stay of petition to compel arbitration as parallel to state court proceedings even though some of the parties to the state court proceedings were not parties to the petition to compel).

preserve its right to seek arbitration implies that Allstate believes that its claims arise out of the "same transaction, occurrence, or series of transactions or occurrences" as Continental's action, such that cross-claims against A.O. would be procedurally appropriate. *See* Wisc. Stat. 802.07(3).[6] And if Allstate believes that the dispute it seeks to arbitrate with A.O. arises out of the same transaction or occurrence as Continental's action in Wisconsin, that belief contradicts its argument that the two actions are not parallel.

Furthermore, Allstate's contention that the issues it seeks to arbitrate have not been raised in the Wisconsin case is disingenuous. Both Allstate and A.O. have raised the validity of their Agreement in their pleadings—Allstate as an affirmative defense, and A.O. as a denial of Continental's allegations. Additionally, Allstate sought a stay in the Wisconsin case in favor of arbitration, making the same arguments it makes here. Allstate never argues here or in Wisconsin that the Wisconsin court does not have *jurisdiction* to decide the arbitrability of its disputes with A.O. And Allstate's decision to forbear in specifically seeking a ruling on this issue in Wisconsin does not mean that the issue is not before the Wisconsin court.[7]

---

[6] "A pleading may state as a cross claim any claim by one party against a coparty if the cross claim is based on the same transaction, occurrence, or series of transactions or occurrences as is the claim in the original action or as is a counterclaim therein, or if the cross claim relates to any property that is involved in the original action. Except as prohibited by [by a provision not relevant here], the cross claim may include a claim that the party against whom it is asserted is or may be liable to the cross claimant for all or part of a claim asserted in the action against the cross claimant."

[7] Allstate's motion for a stay in Wisconsin is nearly identical to its petition to compel arbitration in this Court. But Allstate insists that it "never sought" to compel arbitration with A.O. in the Wisconsin court, but "merely gave notice" to the

Allstate also contends that its petition can be neatly separated from Continental's action, because by denying Allstate's motion to stay Continental's summary judgment motion the Wisconsin court has already decided that a decision on Continental's subrogation and contribution claims is logically prior to a decision on Allstate's dispute with A.O. But Allstate's own characterization of the Wisconsin court's off-the-record ruling is to the contrary. In an affidavit describing the hearing in the Wisconsin court, Allstate's counsel states that Continental argued that its motion for summary judgment against Allstate "was in no way dependent on whether [the Agreement] between Allstate and [A.O.] was valid or effective." R. 22-10 ¶ 6. But Allstate's counsel also states that in response to Continental's representation regarding the contents of its summary judgment motion, the Wisconsin court stated that it would review the motion and "would see *if it could* rule on . . . Continental's motion for summary judgment without regard to whether [the Agreement] was valid and effective." R. 22-10 ¶ 7 (emphasis added). This characterization indicates that the Wisconsin court anticipates that Continental's summary judgment motion may implicate Allstate's affirmative defenses. It is unsurprising that a plaintiff, like Continental, would try to persuade the court that the court could find in its favor despite a defendant's affirmative defenses. But it is odd for the defendant—here Allstate—to rely on such an argument and contend that its own affirmative defenses will not be implicated in addressing the opposing party's motion for summary judgment. Presumably, Allstate would not have raised

Wisconsin court "of its intent to separately arbitrate its dispute with A.O." R. 22 at 13.

its Agreement with A.O. as an affirmative defense if Allstate thought it was irrelevant to deciding Continental's claims. For these reasons, the Court finds that Allstate's action is parallel to Continental's.

**B.     Exceptional Circumstances**

The following factors are relevant to whether abstention is proper:

> (1) whether the state has assumed jurisdiction over property;
> (2) the inconvenience of the federal forum;
> (3) the desirability of avoiding piecemeal litigation;
> (4) the order in which jurisdiction was obtained by the concurrent forums;
> (5) the source of governing law, state or federal;
> (6) the adequacy of state-court action to protect the federal plaintiff's rights;
> (7) the relative progress of state and federal proceedings;
> (8) the presence or absence of concurrent jurisdiction;
> (9) the availability of removal; and
> (10) the vexatious or contrived nature of the federal claim.

*Freed*, 756 F.3d at 1018. The first, second, and tenth factors do not weigh in favor of either forum. The state court has not assumed jurisdiction over any property, so the first factor is irrelevant in this case. Further, there is no indication that Chicago is any more or less convenient than Milwaukee, as the two cities are only 90 miles apart. Additionally, there is nothing vexatious or contrived about filing a petition to compel arbitration in federal court. Thus, these factors are either neutral or counsel in favor of exercising the Court's jurisdiction.

The fourth, fifth, sixth, seventh, and eighth factors, however, weigh in favor of abstention. The Wisconsin case was filed a year before Allstate filed its petition here. Wisconsin law governs the Agreement between Allstate and A.O. *See Clark v.*

*Lacy*, 376 F.3d 682, 687-88 (7th Cir. 2004) ("[W]e agree with the district court's determination that because both cases are governed by New York law, it is better to defer to the New York courts to consider the issues presented. A state court's expertise in applying its own law favors a *Colorado River* stay."). Further, under the FAA, state and federal courts have concurrent jurisdiction, and the Seventh Circuit has held that state courts should be presumed to be competent to rule on petitions to compel arbitration. *See Zurich Am. Ins. Co. v. Superior Court for the State of California*, 326 F.3d 816, 826 (7th Cir. 2002) ("Congress viewed state courts as fully capable of effectuating [the] policies [of the FAA].") (citation omitted); *see also Tyrer v. City of South Beloit*, 456 F.3d 744, 757 (7th Cir. 2006) ("The insinuation that Illinois courts will not live up to the standard of full and fair adjudication of the issues is pure speculation that we expressly disavow."). Notably, the Seventh Circuit has affirmed a district court's decision to abstain from consideration of a petition to compel arbitration when the issue was already before, and much closer to resolution in, the state court. *See CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849 (7th Cir. 2002). These are all reasons for the Court to abstain in this case.

Most important here, however, is the third factor's desire to avoid piecemeal litigation, and the related ninth factor that Continental's action cannot be removed. "By far the most important factor . . . [is] avoidance of piecemeal litigation." *Moses*, 460 U.S. at 16. Piecemeal litigation is to be avoided because it causes "wasteful litigation" and risks "inconsistent rulings [which] could jeopardize the appearance and actuality of justice." *Freed*, 756 F.3d at 1022. Courts are to "advance[] this

policy by favoring the most complete action." *Fed. Rural Elec. Ins. Corp. v. Ark. Elec. Cooperatives, Inc.*, 48 F.3d 294, 298 (8th Cir. 1995). This is especially true with respect to disputes regarding insurance coverage. *See id.* ("[T]he interest of an insured in binding as many of its insurers as possible to a single adjudication is a factor strongly weighing in favor of maintenance of an inclusive action. [The Eighth Circuit] disapprove[s] of the strategic omission of nondiverse insurers to create diversity.").

In finding that Allstate's action is parallel to Continental's action, the Court explained that Continental, Allstate, A.O., and its other insurance company are all parties to a dispute regarding responsibility for A.O.'s liabilities. Since Allstate cannot remove Continental's action, Allstate has sliced off part of that dispute and brought it to federal court where it cannot bring Continental. Such a strategy is disfavored. *See Clark*, 376 F.3d at 688 ("Not only does the availability of concurrent jurisdiction weigh in favor of a stay, so does the inability to remove the [state] action to federal court."); *cf. Vaden*, 556 U.S. at 51-52 ("Allowing parties to commandeer a federal court to slice off responsive pleadings for discrete arbitration while leaving the remainder of the parties' controversy pending in state court makes scant sense."). Although Allstate frames its action merely as a petition to compel arbitration, if the Court compels arbitration, the arbitrator will decide whether it is permissible under Wisconsin law to enter into an agreement affecting a third party's subrogation rights as the Agreement between Allstate and A.O. purports to do. But since Allstate raised the Agreement as the basis of an

affirmative defense to Continental's complaint, the issue of the legality of the Agreement is not necessarily reserved for an arbitrator. The Wisconsin court will decide the legal effect of the Agreement on Continental's subrogation rights if it determines such a ruling is necessary on Continental's motion for summary judgment. In this way, that question is at the heart of Continental's action in the Wisconsin court. Why else would Allstate raise the Agreement as an affirmative defense? Indeed, as mentioned already, according to Allstate, the Wisconsin court anticipated that the question of the validity of the Agreement could be relevant to Continental's summary judgment motion. The risk of "inconsistent rulings" on the validity of the Agreement between Allstate and A.O. is sufficiently likely such that abstention by this Court is warranted.

## Conclusion

For the foregoing reasons, A.O.'s motion, R. 7, is denied in that the Court will not dismiss Allstate's petition for lack of ripeness, and granted in that the Court stays Allstate's petition pending resolution of the Wisconsin case. A.O.'s motion for an extension of time to respond to Allstate's discovery request and for a protective order, R. 10, is granted in that the stay pursuant to the Court's decision to abstain in favor of the Wisconsin case also applies to discovery. Additionally, Allstate's motion for summary judgment on its petition, R. 32, is denied without prejudice pending a lifting of the stay. A status hearing is set for April 21, 2016 at 9 A.M. In lieu of appearing on April 21, the parties may file a status report on April 18, 2016 reporting on the status of the Wisconsin case and proposing a new status date. Of

course, should the Wisconsin case conclude without the need to revisit Allstate's petition here, the parties should inform the Court immediately.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: October 23, 2015