UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>A.O. SMITH CORPORATION,<br><br>Defendant. | No. 15 C 6574<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Allstate Insurance Company filed a petition seeking an order compelling A.O. Smith Corporation ("A.O.") to arbitrate a dispute regarding a Settlement/Coverage-in Place Agreement pursuant to the Federal Arbitration Act. R. 1. On October 23, 2015, the Court granted A.O.'s motion to stay the case pursuant to the *Colorado River* doctrine. R. 36 (*Allstate Ins. Co. v. A.O. Smith Corp.*, 2015 WL 6445529 (N.D. Ill. Oct. 23, 2015)) (the "October 23 Order"). Allstate has now moved the Court to reconsider that decision. R. 37. For the following reasons, Allstate's motion to reconsider is denied.

**Legal Standard**

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (citation omitted). They are proper where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or

has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990) (citations omitted). Motions for reconsideration are not, however, "appropriate vehicle[s] for relitigating arguments that the Court previously rejected or for arguing issues that could have been raised during the consideration of the motion presently under reconsideration." *Caine v. Burge,* 897 F. Supp. 2d 714, 717 (N.D. Ill. 2012) (citing *Caisse,* 90 F.3d at 1270). Nevertheless, a district court has "discretion to reconsider an interlocutory judgment or order at any time prior to final judgment." *Mintz v. Caterpillar Inc.,* 788 F.3d 673, 679 (7th Cir. 2015) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities."); *Janusz v. City of Chicago*, 78 F. Supp. 3d 782, 787 (N.D. Ill. 2015) ("The court has the inherent authority to reconsider its interlocutory orders because such orders may be revised at any time before the entirety of judgment adjudicating all the claims.").

**Background**

The following is a recitation of the background of this case, condensed from the Court's October 23 Order: A.O. manufactured and sold products containing asbestos, and has been sued in numerous lawsuits regarding those products. R. 1 ¶¶ 2, 7. Beginning in 1967, A.O. purchased various insurance policies, some of which

have been exhausted, and some of which were with insurers that have become insolvent or are otherwise unable to pay. *Id.* ¶¶ 5-6, 9; R. 8-2 at 6-7 (¶¶ 11-24). Disputes have arisen among A.O. and its remaining insurers regarding responsibly for A.O.'s liabilities arising out of asbestos claims. R. 1 ¶ 8.

A.O. and Allstate entered into a Settlement/Coverage-in Place Agreement (the "Agreement") to limit Allstate's coverage obligations. *Id.* These limits caused A.O. to avoid tendering its insurance claims to Allstate and instead tender its claims to other insurers. *Id.* ¶ 12. One of those insurers, Continental Casualty Company, has sued Allstate and A.O. in Wisconsin state court alleging that "Continental has paid more than its fair share of defense and indemnity in connection with . . . asbestos lawsuits filed against [A.O.]." *Id.* ¶ 14; *see* R. 8-2 at 4-12. Continental seeks subrogation and contribution from Allstate for $1,135,191.43. *See* R. 1 ¶ 14; R. 8-2 at 9 (¶ 30). Continental, however, does not simply allege that it is entitled to subrogation and contribution from Allstate. Continental also alleges that A.O. has asserted that its Agreement with Allstate gives it the "right to require [Continental] to pay for all defense and indemnity payments for asbestos claims." R. 8-2 at 8 (¶ 27). Further, Continental alleges that the caps on Allstate's obligations to pay indemnity and defense costs, and the related release A.O. granted Allstate, impermissibly limit Continental's ability to receive subrogation and contribution from Allstate. *Id.* at 8-9 (¶ 29).

In response to Continental's allegations in the Wisconsin case, Allstate asserted affirmative defenses based on its Agreement with A.O. In general,

3

Allstate's answer in the Wisconsin case argues that Continental only has subrogation and contribution rights against Allstate to the extent that Allstate is obligated to A.O. for indemnity and defense costs pursuant to the Agreement between Allstate and A.O. Since the Agreement limits Allstate's obligations to A.O., Allstate argues in the Wisconsin case that the Agreement also serves to limit Continental's rights of subrogation and contribution against Allstate.

Conversely, A.O., in its answer to Continental's complaint in the Wisconsin court, denies that it "entered into [the Agreement] with [Allstate] . . . that include[s] all [Allstate] policies." R. 8-4 at 5 (¶ 25). A.O.'s answer also denies that pursuant to the Agreement, Allstate "agrees to pay for the asbestos claims at issue subject . . . to an annual cap . . . of $300,000 for the first six years, and $500,000 thereafter." *Id.* (¶ 26).

Allstate sought a stay in the Wisconsin state case to allow it to arbitrate its "dispute [with A.O.] . . . concerning the validity of [the Agreement] pleaded in Continental's complaint before addressing the merits of Continental's contribution claim against Allstate." *See* R. 8-1 at 3 (¶ 5). Allstate also argued that "the validity and the effect of [the Agreement] between Allstate and [A.O.] must be confirmed before Continental's subrogation and contribution claims can be addressed." *Id.* (¶ 6). Continental opposed Allstate's motion for a stay, arguing that the state court could grant it summary judgment without deciding whether the Agreement "between Allstate and [A.O.] was valid or effective." R. 22-10 ¶ 6. The Wisconsin court denied Allstate's motion, and stated that it would review Continental's motion

once it was filed and "would see if it could rule on . . . [it] without regard to whether [the Agreement] was valid and effective." *Id.* ¶ 7. Continental's summary judgment motion in the Wisconsin case is now fully briefed and was argued on December 2, 2015.

Analysis

I. Parallel Actions

Allstate argues that the Court erroneously held that Allstate's action is parallel to the Wisconsin action. Allstate describes the Court's errors as errors of "apprehension." But Allstate does not raise any facts or law of which the Court was unaware in finding that the Wisconsin action is parallel to Allstate's action in this Court. Instead, Allstate questions the Court's reasoning in reaching its decision. Thus, Allstate has not raised any basis for the Court to reconsider that finding.

Nevertheless, the Court takes the opportunity afforded by Allstate's motion to revise and clarify its reasoning in support of its finding that this action is parallel to the Wisconsin action. As the Court noted in its October 23 Order, in order to "fulfill the requirement of parallelism . . . substantially the same parties [must be] contemporaneously litigating substantially the same issues in another forum." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1019 (7th Cir. 2014). The Court found that this action is parallel to the Wisconsin action because "both actions raise the validity of the Agreement between Allstate and A.O." R. 36 at 19 (*Allstate*, 2015 WL 6445529, at *8). But the *substantive* "validity of the Agreement"—i.e., "whether it is permissible under Wisconsin law to enter into an

5

agreement affecting a third party's subrogation rights as the Agreement between Allstate and A.O. purports to do," R. 36 at 24 (*Allstate*, 2015 WL 6445529, at \*10)—is not at issue in this action by Allstate to compel arbitration. Rather, the only questions relevant to Allstate's action in this Court are whether Allstate can show "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014). It is those issues that Allstate and A.O. must be "contemporaneously litigating" in the Wisconsin court for this action to be parallel to the Wisconsin action.

The Court found, in its October 23 Order, that Allstate has raised those issues before the Wisconsin court. Allstate sought to stay the Wisconsin action to allow for arbitration of its dispute with A.O. As noted in the October 23 Order, the Wisconsin court denied that motion without prejudice and stated that it would review Continental's anticipated summary judgment motion (which has since been fully briefed and argued) and "would see if it could rule on . . . Continental's motion for summary judgment without regard to whether [the Agreement] was valid and effective." R. 22-10 ¶ 7. The Wisconsin court's statement indicates that it believes that it is prudent to wait to address Allstate's dispute with A.O. in light of a determination of Continental's right to subrogation or contribution from Allstate. Thus, the Wisconsin court clearly still believes that the issue of the arbitrability of the dispute between Allstate and A.O. is pending before it, but it has deferred ruling on it for the time being. Since the question of the arbitrability of the dispute

6

between Allstate and A.O. is being simultaneously litigated in this action and the Wisconsin action, the two actions are parallel, and the Court need not reconsider its finding to that effect in the October 23 Order.

## II. Exceptional Circumstances

Allstate also argues that the Court erred in finding exceptional circumstances justifying a stay because that finding is contrary to the Supreme Court's holding in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983). Allstate notes that in *Moses*, the Supreme Court held that the Federal Arbitration Act "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement," and that the "arbitrability issue . . . is easily severable from the merits of the underlying disputes." *Id.* at 20-21 (emphasis added). On this basis, Allstate argues that the Court's decision to stay Allstate's petition to compel arbitration was in error because Allstate's petition regarding the issue of arbitrability "is easily severable from the Wisconsin Action," and "even if piecemeal litigation results in this case because Continental's subrogation and contribution claims may not be arbitrable, that is the inevitable and anticipated result of the federal policy strongly favoring arbitration." R. 37 at 7.

Despite the categorical nature of the Supreme Court's language in *Moses*, the Seventh Circuit has held that *Moses* does not stand for the principle that it is never within a district court's discretion to stay a petition to compel arbitration under the *Colorado River* doctrine. *See CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849 (7th Cir. 2002). In *CIGNA*, the court held that the "decision to abstain"

7

from addressing parallel proceedings is "close[ly] relat[ed]" to "normal docket control" or "judicial economy." *Id.* at 852, 853; *see also Freed*, 756 F.3d at 1018 ("The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial resources and prevent inconsistent results."). Exercise of this discretion should take into account the factors described in *Colorado River* and *Moses*, "[b]ut there is no hard and fast rule as to when parallel-proceeding abstention is proper or improper." *Id.* at 852. The court in *CIGNA* affirmed the district court's decision to abstain "because while the issue of arbitrability is about to be briefed in the state court there has been no movement in [the] federal suit." *Id.* at 853. On this basis, the court held "it best (more precisely, [the court thought] the district court judge did not abuse his discretion in thinking it best) to allow the federal suit to be stayed at least until the state judge rules on CIGNA's motion to compel arbitration—provided that ruling is not too long delayed." *Id.* at 855. The Tenth and Fifth Circuits have also found occasion to affirm district courts' decisions to abstain from addressing petitions to compel arbitration when state court proceedings were more advanced. *See D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1235-36 (10th Cir.) *cert. denied,* 133 S. Ct. 2831 (2013) ("This case has been interwoven with a state-court system—on both the trial and appellate levels—on a scale simply not seen in *Moses H. Cone.* . . . Guided by this bedrock principle of judicial administration, we now hold that this case should live out the rest of its days in the place where it began: the Utah state courts."); *Nationstar Mortg. LLC v. Knox*, 351 Fed. App'x 844, 852 (5th Cir. 2009) ("For reasons of '[w]ise judicial administration',

8

however, abstention was not improper. As discussed, this diversity action is governed by state law (except, of course, the arbitrability issue); the state court is subject to, and can likewise apply, the [Federal Arbitration Act]; and the merits of the parties' dispute have not been reached in either the state or the federal action.").

In this case, the Wisconsin court is even closer to deciding whether it will reach the issue of arbitrability than was the state court in *CIGNA*. Summary judgment on the underlying dispute in state court is fully briefed and argued. And the Wisconsin court has indicated that it will address arbitrability in light of the issues raised by the summary judgment motion. Although the Wisconsin court did not issue a written opinion describing its reasoning, the parties' characterizations of the court's reasoning demonstrate that the Wisconsin court contemplates that arbitration may be unnecessary if Continental's claims do not in fact implicate the Agreement between Allstate and A.O. On the other hand, the Wisconsin court also appears to have contemplated that, since Allstate has raised the Agreement as an affirmative defense, the Wisconsin court may have occasion to rule on the substantive validity of the Agreement, and by extension the validity of the Agreement's arbitration clause. Such a ruling would implicate the intersection of Wisconsin insurance law and contract law, both of which are the purview of the Wisconsin court. Additionally, to the extent that Allstate's agreement with A.O. has the ability to limit Allstate's liability to Continental, it is appropriate for the court with a greater understanding of Continental's claims to determine the issue of

9

arbitrability of the Agreement as well. For these reasons, the Court finds that the Wisconsin court is currently in a more informed position from which to address the issue of arbitrability, and a stay is warranted on that basis.

In reaching this finding the Court acknowledges that the Seventh Circuit's decision in *CIGNA* was based in part on an "awkward split" of the issue of arbitrability. 294 F.3d at 853. In that case, a number of healthcare providers sued an insurance company. Some of the providers' contracts with the insurance company included an arbitration clause, and the insurance company argued that the remaining contracts incorporated that same arbitration clause by reference. The insurance company filed a petition in federal court to compel arbitration with the providers whose contracts included the arbitration clause, and moved in the state court to compel arbitration with the remaining providers. The Seventh Circuit held that "the district court had compelling reasons of judicial economy to abstain, because there was an awkward split of the issue of arbitrability between contracts that contain an arbitration clause[,] [which were before the federal court,] and contracts claimed to incorporate [the exact same] clause by reference[,] [which were before the state court], and also because while the issue of arbitrability is about to be briefed in the state court there has been no movement in [the] federal suit." *Id.*

Although the procedural posture of this case is different, the Court finds the circumstances attendant to judicial economy equally compelling. As noted, the Wisconsin court is even closer to addressing the issue of arbitrability than the state court in *CIGNA*. Additionally, like the state court in *CIGNA*, the Wisconsin court

will have the opportunity to address the issue of arbitrability holistically in the greater context of the disputes among the relevant parties, which are all based in state law. It is prudent to allow the court with a better sense of the underlying facts and scope of the parties' disputes to address the issue. *See Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) ("state courts have a prominent role to play as enforcers of agreements to arbitrate"). Furthermore, any risk that the Wisconsin court will fail to accord proper respect to federal policies favoring arbitration is mitigated by the fact that the Court has merely stayed Allstate's petition. The parties have represented that the Wisconsin court heard argument on Continental's summary judgment motion on December 2, 2015. To the extent that the Wisconsin court determines that it is not necessary to address the issue of arbitrability, but Allstate believes it nonetheless continues to have an arbitrable dispute with A.O., Allstate may return to this Court and seek relief.

For the reasons stated herein and in the Court's October 23 Order, the Court finds it appropriate to exercise its inherent authority to manage its docket and stay Allstate's petition. *See Conrad v. Boiron, Inc.*, 2014 WL 2937021, at *3 (N.D. Ill. June 30, 2014) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."); *see also Ryan v. Gonzales*, 133 S. Ct. 696, 708 (2013) ("'[d]istrict courts . . . ordinarily have authority to issue stays, where such a stay would be a proper exercise of discretion.'" (quoting *Rhines v. Weber,* 544 U.S. 269, 276 (2005)); "a district court may stay a case 'pending before

11

it by virtue of its inherent power to control the progress of the cause so as to maintain the orderly processes of justice'" (quoting *Enelow v. N.Y. Life Ins. Co.,* 293 U.S. 379, 382 (1935))). A stay is appropriate in this case until the Wisconsin court addresses Continental's summary judgment motion, and presumably—in the context of that motion—Allstate's desire for arbitration. If Continental's summary judgment motion was before this Court, the Court would address the parties' motions in that order. The Court sees no reason to alter that process just because the motions have been filed in two different state and federal courts. Thus, a stay of Allstate's petition to allow the Wisconsin court to address Continental's summary judgment motion—and presumably the arbitrability of the Agreement—is appropriate.

## Conclusion

For the foregoing reasons, Allstate's motion to reconsider the Court's order staying this action, R. 37, is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: December 11, 2015